IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

RECEIVED

KEYLA EXFORD, RITCHIE L.
STALNAKER, and MONA THOMAS,
on behalf of themselves and all others
similarly situated,

*Plaintiffs,*

v.

KC ECONOMIC DEVELOPMENT
LLC and MILTON E. McGREGOR

*Defendant.*

2017 MAY 26  A 9: 59

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Civil Action No. 3:17-cv-340

**CLASS ACTION**

## CLASS ACTION COMPLAINT

**COME NOW PLAINTIFFS**, KEYLA EXFORD, RITCHIE L. STALNAKER,

and MONA THOMAS, and file this Class Action Complaint for the purpose of enforcing

a judgment previously entered in this Court in Case No. 3:10-CV-895 in the amount of

$2,734,851.63, as follows:

### I. PARTIES

1)    Plaintiffs and Class Members are former employees of Macon County

Greyhound Park, Inc. a/k/a VictoryLand and are owners of a Judgment in the amount of

$2,734,851.63 entered by the Honorable Mark E. Fuller on July 22, 2014 (herein "the

WARN Act Judgment"), in proceedings in the United States District Court for the Middle

District of Alabama styled *Judy Weekes-Walker, et al vs. Macon County Greyhound Park,

Inc. a/k/a VictoryLand*, Case No. 3:10-CV-895 (herein "the WARN Act case").  [Judy

Weekes-Walker, one of the class representatives in the WARN Act case is now deceased.]

1

2) Defendant KCED Economic Development, LLC (herein "KCED") is a single-member limited liability company organized pursuant to the laws of the State of Alabama and is the successor of Macon County Greyhound Park, Inc. (herein "MCGP") doing business as "VictoryLand" in Shorter, Macon County, Alabama.

3) Defendant Milton E. McGregor is the single member of KCED, and is sued individually as the alter-ego of KCED.   Mr. McGregor is a resident of Montgomery County, Alabama.

## II. JURISDICTION

4) This Court has jurisdiction pursuant to 28 USCS 1331 in that the Complaint presents a federal question regarding the enforcement of federal employment law. Federal Courts, including the Eleventh Circuit Court of Appeals have recognized, as a matter of federal common law, a doctrine of successor liability, in order to assure the enforcement of federal statutes, such as the WARN ACT, that deal with policies of employment law:

> Although this court does not appear to have applied the federal-common-law standard in FLSA actions, it and the Supreme Court have consistently applied it under other federal labor laws. For example, following its recognition in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 548, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964), of successor liability under the Labor Management Relations Act, the Supreme Court in *Golden State Bottling Co. v. National Labor Relations Board* recognized successor liability under the National Labor Relations Act, explaining "the labor-law doctrine of successorship" was not as narrowly construed as the rule of corporate liability (which restricts successor liability to: explicit assumption by the acquirer, an acquirer who is "merely a continuation" of the predecessor, and transactions "entered into to escape liability"). **414 U.S. 168, 176-87, 182 n.5, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973)**; *see also Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674-75, 64 S. Ct. 826, 88 L. Ed. 1001 (1944) (applying successor liability in a FLSA injunctive-relief action). Other circuits have followed suit. *See, e.g., Teed*, 711 F.3d at 764-65 (collecting cases); *Steinbach v. Hubbard*, 51 F.3d 843, 845-48 (9th Cir. 1995); *see also Cuervo v. Airport*

2

*Servs., Inc.*, 984 F. Supp. 2d 1333, 1337-39 (S.D. Fla. 2013) (collecting cases and, predicting the Eleventh Circuit would agree, applying the federal-common-law standard).

And, this court recognized successor liability under Title VII of the Civil Rights Act of 1964, ruling successor liability in labor cases was "equally compelling in Title VII litigation". *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983). In so holding, this court explained that, based on Supreme Court precedent, "the test for successor liability is fact specific and must be conducted in light of the facts of each case and the particular legal obligation which is at issue . . . . [T]here is, and can be, no single definition of successor which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others". *Id.* (internal quotation marks omitted).

Therefore, this court's precedent supports, as stated by the seventh circuit, that "having a distinct federal standard applicable to federal labor and employment statutes . . . [is] often . . . necessary to achieve the statutory goals [of those laws] because the workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them". *Teed*, 711 F.3d at 766. In other words, "successor liability is appropriate in suits to enforce federal labor or employment laws" to prohibit employers who violated those laws from avoiding liability by selling, or otherwise disposing of, their assets and dissolving, and the acquirer likewise does not assume liability in its purchase. *Id.* at 766-67. The FLSA, at minimum, protects workers by enforcing minimum wages and overtime regulations; it cannot be disputed that applying successor liability in this instance achieves that purpose. *Id.* at 767. Accordingly, as the district court concluded, we proceed under federal successor-liability law.

Hatfield v. A+ Nursetemps, Inc., 651 F. App'x 901, 906-07 (11th Cir. 2016).

## III.  SUCCESSOR LIABILITY

5) Plaintiffs in this case are Class Representatives appointed in the WARN Act case

to represent the class and sub-classes as defined in that litigation by Order of this Court in

the WARN Act case (Doc. No. 145).

3

6) Judgment was entered in favor of the Plaintiffs and the Class and against MCGP in the WARN Act case on the 22nd day of July, 2014 in the amount of $2,734,851.63 (Doc. No. 168).

7) This litigation is filed solely for the purpose of enforcing a judgment against the successor in interest of MCGP, pursuant to federal common law related to federal employment law. Plaintiffs ask that the Court take judicial notice of the previous class certification in this Court and allow the parties to continue to represent the Class in this enforcement action, to enforce the WARN Act Judgment, without further requirements pertaining to class certification.

8) MCGP has failed and refused to pay the said judgment and has vigorously opposed execution.

9) Summary Judgment as to liability was entered in favor of the Class and against MCGP in the WARN Act case on the 6th day of July, 2012. (Doc. 113)

10) Milton E. McGregor organized KCED Economic Development LLC as a single-member limited liability company on the 24th day of August, 2012.

11) MCGP is still in existence and holds title to the property on which the gambling casino that continues to operate using the name "VictoryLand" is located, but the property is subject to a $75,000,000 mortgage to International Game Technology (herein "IGT"), which impedes enforcement of the WARN Act Judgment by sale of the casino property[1], and MCGP has authorized KCED to operate the casino on the property.

---

[1] The class representatives have filed suit in State Court seeking a declaratory judgment holding the IGT Mortgage to be a contract for an illegal purpose, in that its purpose was for establishment of a casino for the operation of electronic "Bingo" machines that the State of Alabama has declared to be illegal.

12) Milton E. McGregor controls KCED. KCED succeeded to the gambling operations of MCGP during the time period in which the judgment in the WARN Act case was being finalized.

13) The judgment in the WARN Act case is a judgment based on federal employment law, and the enforcement of the judgment against any successor interest is governed by federal common law related to federal employment policies.

## PIERCING THE CORPORATE VEIL

14) On information and belief, and based on the fact that he is the only member listed in the Articles of Organization, Plaintiffs allege that Milton E. McGregor is the sole member of KCED.

15) As the sole member of KCED, Milton E. McGregor controls KCED.

16) Milton E. McGregor is the alter-ego of KCED and is, in fact, the successor business of the gambling enterprise formerly operated by MCGP.

17) With regard to business entities organized under the laws of the State of Alabama, the CODE OF ALABAMA provides as follows concerning the conduct of illegal business:

> A domestic entity may not engage in a business or activity that: (A) is expressly unlawful or prohibited by a law of this state; (B) cannot be engaged in by that entity under a law of this state; or (C) may not be engaged in by an entity without first obtaining a license under the law of this state to engage in that business or activity and a license cannot lawfully by granted to the entity.

> § 10A-1-2.02, CODE OF ALABAMA

> This division does not authorize a domestic entity or a managerial official of a domestic entity to exercise a power in a manner inconsistent with a

limitation on the purposes or powers of the entity contained in its governing documents, this title, or other law of this state.

§10A-1-2.15, CODE OF ALABAMA

KCED is a "domestic entity" within the meaning of those statutes.

18)  The principal business of KCED is the operation of what Mr. McGregor has unsuccessfully contended to be electronic Bingo machines.

19)  The Supreme Court of Alabama has made it abundantly clear that the operation of such machines, including the operation of the machines operated by KCED in 2012 is not lawful under the laws of the State of Alabama. *State of Alabama v. $223,405.86, et al*, 203 So. 3d 816 (2016).

20)  KCED continues its operation at the same location and continues to use the trade name *VictoryLand* as well as the trade name *Quincy's 777*.

21)  KCED is operating under the same management that operated MCGP.

22)  Plaintiffs are informed and believe, and upon such information and belief charge the fact to be that KCED continues to use the services of certain former employees of MCGP.

23)  In view of the fact that it is not lawful for KCED to operate such machines, it is clear that Milton E. McGregor is personally accountable for the operation of the machines, this Court should pierce the corporate veil and hold Milton E. McGregor personally liable for any obligation of KCED.

24)  At the time the WARN Act Judgment was entered against MCGP, Milton E. McGregor was intimately involved in all the activities of MCGP as the President, a

6

Director, and the controlling stockholder, and had sufficient control of MCGP to divert its business operations to KCED, which is totally owned by him.

## REQUEST FOR RELIEF

Based on the foregoing allegations, the Plaintiffs respectfully request that the Court require the Defendants to answer this Complaint within the time allowed by law, allow appropriate discovery, and upon trial of the case enter its Judgment holding:

a)    KCED Economic Development LLC is the successor of Macon County Greyhound Park, Inc., continuing the same business, and is liable for the Warn Act Judgment;

b)    Milton E. McGregor is the alter-ego of KCED Economic Development, LLC and is personally liable for any matter of which KCED Economic Development LLC is liable and is liable for the WARN Act Judgment as the successor of MCGP

c)    Awarding attorneys' fees and costs to the Plaintiffs; and

d)    Such other, further, and different relief available under all applicable laws and any relief the Court deems just and appropriate.

**DATED:  May 25, 2017**


John Michael Segrest ASB-8306-H58S
Philip Dale Segrest ASB-6870-E61P
Counsel for Plaintiffs
The Segrest Law Firm
P.O. Box 780791
Tallassee, AL  36078
334-252-0036
Fax: 334-252-0037
Email:  Mike.Segrest@Segrestlaw.com
Email:  Dale.Segrest@Segrestlaw.com